The first case for argument this morning is 17-1953 Automated Merchandising v. Iancu. Mr. Berkowitz. May it please the Court. Amos is not waiving or banning any of the arguments presented in its briefing, but given the importance of the policy question that's presented here, I want to focus the argument today on that issue. Specifically, what value should consent judgments be given in subsequent litigation? Because the statute at issue has expired, if you rule for me, you'll simply be affirming the value of consent judgments based on stipulation without creating a broad precedent. This statute was replaced, as you know, the inter-parties re-examination was replaced by inter-parties review a number of years ago. So this is unique to inter-parties re-examination. At JA 1738, the PTO dismissed your petition to terminate the proceedings on the basis that AMS had not demonstrated that the same claims were at issue in the district court litigations and the re-examination proceedings. Where in the opening brief do you challenge the PTO's determination that the same claims were involved in both proceedings? Your Honor, two responses to that. First, we filed a petition for each of the four patents at issue in each of the four cases. And we got a dismissal from the Patent Office in the first round saying you didn't do this, you didn't do that, you didn't do this. Each of these petitions at the time was costing $1,940. Since the exact same issues were present in all four cases, we filed a second petition and a renewal of that petition only for the 634 patent, but the issues would be the same. However, that was decided we believed would control all four cases. So that dismissal, that sort of became water under the bridge when the final decision in the 634 patent case was issued. The answer to that is they were saying that only certain claims were at issue. What we did is we presented in the 634 patent, we presented the answer which included all their counterclaims attacking the validity of each of the asserted patents. And then also their expert report where it was late in the game where they were still attacking each of the claims that were asserted. Let me ask you this. Supposing we agree with you that the PTO should have terminated the proceedings, but we also conclude that the same claims weren't at issue in the district court litigation and the re-exams, would the appropriate remedy be partial termination for the claims at issue in both? Your Honor, what I would suggest to that is I think that would be one answer and that would be splitting the baby, but I think the best answer would be to remand it to determine which claims were actually at issue. And the issue that the PTO raised specifically, there's actually two categories. The issue that they are primarily based on the fact that going to trial, we were scheduled to go to trial like two or three days later after we reached agreement. But that week we had presented a pretrial order where we had reduced the number of claims that we were going to go to trial on because we had four patents with, I don't know, maybe 200 claims. So we reduced it somewhat. There were still a large number of claims and those, Your Honor, are still the key claims in our case. But then the defendant, Crane in that case, the requester, was under no obligation to mirror that and reduce their validity challenge. They did that voluntarily. And so that was their choice. But critically here, things happened very quickly after that. That pretrial order was never entered. It was only a draft pretrial order. So the offer to reduce claims, both by us and by Crane, never became effective. So where does that lead us? The claims were the same, all the claims that were there or All the claims were present in the case. But if there's going to be a determination that one way or the other, I think that the Patent Office would be, rather than using this court's time to try to wade through the evidence, I think it should go back to the Patent Office. But critically also, from my perspective, is the District Court didn't come in and say these claims of the patent are valid. It went back to what was originally put at the complaint in the counterclaims and said the claims of these patents are valid, didn't identify specific claims. So Crane stipulated to that. Crane was the requester. And we feel that that should have ended the... So under the statutory language of 317B requires a final decision entered. The party has not sustained its burden of proving the invalidity of any patent claim or suit. Isn't this consent judgment different? All it says is that the parties stipulate that these patents that are listed are valid. Isn't that a distinction? No, I don't think it is a distinction. Because if you look at the consent... Why not? The District Court has made no determination with respect to the validity of any of these claims, right? The statute doesn't require... That's the Patent Office argument, that they're saying consent judgments are only valid if it either reflects the court's decision or is worded to suggest that the court decided that. No consent judgment is based on a court decision. That's a whole different animal. So what in your... Well, you know, I sat at trial level for a long time and certainly I reviewed those consents from the court's viewpoint as well as the party's. I wouldn't have signed something that I thought was improper. I agree, but I'm not saying that, Your Honor. What I'm saying is that the statute doesn't require that the court decide. In fact, the final decision is a terminology that frankly has very little to do with the Patent Office. It's not a stipulation. It's a consent decision. You're stipulating to it, right? Right. It is a consent decision. Okay, it is, but that's the policy position that I want to talk about and that is courts, this court and all the courts, to my knowledge, follow the same practice and that is consent judgments are treated as on the merits to the extent that they actually specify what the issue is. In this case, if you look at the consent judgment, it's Appendix 1509 in Volume 2 of the appendix. The preamble to the consent judgment, it leads into exactly what the court was doing. It said, the parties, and this is quoting now, hereby consent to entry of judgment as follows. And then bullet point two is the parties stipulate that United States patents and the list of patents are valid. So to say that that's simply a stipulation to be given no effect, I think is to undermine the value of consent judgments and that is a major policy concern. Historically, this court rules on cases, and I've had cases, and I'm sure each of you have had cases, where based on what happened below, the parties stipulate the validity and infringement in order to get a review, probably of a mark and claim construction, which is dispositive. This court, which can only hear, only has jurisdiction over appeals based on final decisions from the district court, it always accepts those decisions, those consent judgments based on stipulations as final decisions. And that's true of every court and every case I've looked at. The intervener points to a 1953 Supreme Court decision and says, no, no, no, these things are only to be treated as pro forma acceptance of what the party stipulated to. And Your Honor, you know the judges actually do look at these things, as you suggest, and they wouldn't sign something that runs afoul of what they think is appropriate. That's been my experience as well. You're saying that the district court judge here drew, reached conclusions with respect to the validity of these seven patents? No, I'm not saying that, because I don't have the evidence to support that. Analyzed though? Did she have the evidence? I mean, what was the role of the district court judge, other than approving the party stipulation? Did the role, did she have any substantive involvement in the adjudication or analysis of any of the claims that were made? He did, Your Honor, Judge Bailey. And Judge Bailey, on these same pieces of art, very late in the case, the defendant Crane filed a summary judgment. And based on the same art and the same arguments, in fact, to their briefs of invalidity, and to their briefs they attach all of the patent office decisions in these inter-parties re-examinations. And the court denied that. Now, I don't think that's a final decision. But again, I think that once you get onto a slippery slope of thinking, what was the judge thinking, the final decision, according to the statute, doesn't require that the judge have made the determination. And that's the intervener's position. Let me get you on the merits a little bit, OK? In the Blue Brief, you argue that the PTAB misconstrued certain claim terms, including Venn Space Fall and Calibration Circuit. Yes. Where in the briefs before the PTAB did you offer construction of Venn Space? There were a number of places where we did that. But among others, we presented- I'd like a citation, because I'm looking for one. OK, I don't have that off the top of my head. But I'll just tell you what they were, and I'll find them while the other side speaks. But what they were was we had a Mark McLean construction from the district court, and we presented that as an attachment. We also had- there had been 12 prior re-examinations on these patents by Crane. Did it differ from the PTAB's construction that Venn Space, quote, extends between the glass to the product support surfaces and so on? Yes and no. The PTAB agreed that the Venn Space has to be between the shelves where the products are displayed and vented from, and the glass, and then the side to side where those trays exist. But the critical distinction is they said that's it. It doesn't extend down into the retrieval bin. But if you look at the claims that are asserted, the claims that are in dispute, they always have the Venn Space going from up there down into the retrieval bin. And so we feel that longitudinal aspect was completely ignored because the primary reference that they use in every rejection had a device that had a divider between the above area and the retrieval bin. So we said there's no way a product can fall through there freely. Can't fall, can't fall freely, can't fall automatically. I read your arguments, Tom. So that- I'll happily find those and get back to you. Your Honor, the time has flown. I apologize, but I wanted to reserve what I have- Wiseman, you're having fun. Thank you. Thank you. I will reserve the remainder of the time. Good morning. Good morning, Your Honors. May it please the Court. As counsel started with the 317 issue, I guess I'll start there. First point being- Do you think a stipulation by the parties that it's entered into by the court as a consent judgment could ever satisfy this? Yes, Your Honor. I think there are consent judgments that could satisfy 317. And in fact- So if the consent judgment had said the challenging party agrees that it has not met its burden of proving invalidity, and the court then enters that as a consent judgment, would that satisfy this bar? That would be closer. I think a stronger case would be- How about one where the parties submit findings of fact and conclusions of law in support of that? Absolutely, Your Honor. And because that's where the statute, we keep going back to the statute in the brief, because it talks about a final decision that the party has not sustained its burden of proving invalidity. And we told AMS during these various petition decisions, those aren't magic words. There are other formulations you can use. But what you- Give us some examples of what the other formulations you can use. Sure. So for example, on Appendix 138, which is one of the petition decisions, we said, while the statutory language is preferred, alternative language imparting a specific decision by the court on the non-invalidity of the particular claims would be accepted. Such as, for example, this judgment is a decision by the court that each and every claim of the 634 patent is in suit and is valid, which was not provided. And AMS has more or less argued these are just magic words, it's a meaningless reformulation. But what really undercuts that is that they admitted in their first appeal, the prior appeal to this court, that they went back to Crane, the requester, and said, will you agree to go with us to the district court judge and request a new consent judgment? Request to modify the language in accordance with what the PTO suggested. And Crane declined that. Can you tell us why that matters? I mean, looking at what the statutory language was intended to allow or foreclose, why the distinctions you're drawing, how they fit into the purpose of the statute? Right. So the purpose of the statute, I think we have to look at the statute as a whole. And part of that is Section 313, which tells the Patent Office, once we determine there's a significant new question of patentability, we are required to take that to resolution and make a determination. And 317 is an exception. And there is a non-discretionary duty to terminate the proceedings if the question has been finally decided by a court or in another re-examination proceeding. But it's narrowly tailored in the plain language of the statute, because otherwise we are obligated to carry the examination forward, which is what we did here. And with respect to the importance of Crane agreeing or not agreeing, I think that just a form over substance type of rejection, which was what AMS essentially argues. So let me try again, because I'm still not sure I understand the answer to your question. If the stipulation said the parties stipulate the dismissal, and then said in a second sentence, the parties stipulate that the one party, Crane I assume, has not met its burden of proving invalidity, and the district court just enters that, in your view that's not good enough? Correct. That would not satisfy. But that's not a determination by the court. Correct. Where in the statute does it require that the court make the determination, rather than just a final decision showing that the party has not met its burden? Sure. So what the statute- Is it just implicit that a final decision showing X has to be the court's decision showing X? That's exactly correct. In fact, it's unclear who else's decision that would be. And as Judge Wallach pointed out, there are situations where a court adopts findings, and the parties could propose a finding, and the court could sign off on that. Now, you could get into some difficult line drawing questions if we try to get inside the judge's head and say, was there a substantive evaluation, to the point of an earlier question. But we don't try to do that. What we do is we say, if you could bring us a judgment, a final decision from a district court, and it's a decision by the court, signed by an Article III judge, that you have not met your burden, or even that these claims are valid, and that they are in suit, then we will dismiss the action. And as AMS points out, we have dismissed many inter-parties re-exams based on consent judgments that do use that language. And those were before the Eastern District of Virginia, and the prior proceeding. I'm not sure why AMS thinks it's improper to look at those, but we've been very consistent with those, with the admitted exception of these Cody decisions, which we've addressed before. So, unless, Your Honor, there's any other questions. Well, I mean, I have to tell you, it still troubles me a little bit, because it seems to turn on the notion of whether the stipulated judgment includes the words, the parties agree that the patent is valid, or the patent is valid. If they had left out the parties agree that, and the district court had otherwise entered the stipulation and the consent judgment, that seems like it would have been good enough for you. Well, because then the judge is adopting the finding. And there is a policy reason to make this distinction, and that is that parties agree to dismiss lawsuits for a lot of reasons. And here, particularly, if we look at the consent judgment, the parties are stipulating that five patents are valid. And that fifth patent is a crane patent, and that's relevant, because the parties were suing each other. They were both accusing each other of patent infringement. We don't know if they just agreed it was too costly, and they would both go their own ways. We have no idea why they settled, and therefore we... It's not beyond district court judges to get something like that, what Judge Hughes posited, just a decision. It's not beyond district court judges to say, send it back and say, give me findings and conclusions, because they do do that. And that would be appropriate here. And in fact, in this case, the judge originally just... In that hypothetical. Right. Well, in this specific case, in the district court case in West Virginia, the district court judge originally just entered a judgment dismissing all claims with prejudice and said, you come back to me if there's anything more I'm required to say. And they came back, and that's when they got this consent judgment that's at Appendix 1509. And they... Can you describe any other areas of the law where the line you're drawing here between what we needed for the district court to say and what you didn't say has a similar effect? Are there other areas? Finality questions, I should think. Finality? Yeah. I don't know if it's attorney's fees. I know there's been no canon in some questions about what actually was resolved and whether there's a prevailing party. Do you think of any others where that distinction would be dispositive of something? Top of mind, I don't have an analogous area, but I do know that the cases... You'd look under Rule 54B certifications, and whether there's finality or determination of finality or not, what the court did in it, because you see that in Wright and Miller all over the place. I mean, that seems reasonable to me. I know that in the cases that have been cited in this dispute, if we look at even, for example, that Supreme Court case, there was a stipulation, but then it was followed by an actual entry of an order adopting the finding with respect to the tax liability in specific years, and that's why that became final. But, again, Congress made a policy decision, and notably, it's a different policy decision than they made in the AIA for post-grant proceedings like IPRs, where 317 was actually renamed settlement. The parties could just come to the patent office and say, we've agreed not to pursue this anymore, and the PTO can drop it at that point, which is a very different policy decision than what Congress did. Do you know if there were other cases other than this one that are percolating through the system? I mean, the new provisions don't... This is based on a provision which is no longer in line. I'm not aware of any specific cases working their way through the system that raise this specific issue. There are other inter-parties re-exams that are still pending. How many? So I asked about that, and it turns out there are somewhere in the range of 150 to 160 that are still pending before the agency. Now, this issue did come before the court before and was briefed in the Affinity Labs case, but the court didn't ultimately need to reach the question because there, the judgment, it was a dismissal without prejudice, and the court noted that the court hadn't made a finding because there was similar stipulation language, but also it wasn't clear that there was even a concession by the parties. So I don't know if the court has directly addressed this, but I'm also not aware of another case pending that will present this issue. Unless Your Honor has any further questions about 317, I'd like to briefly address the merits questions, and I think the claim construction questions, as we said, are brief, are not really what AMS is taking issue with the board's decision. They really are questioning the reading of the art, and the board went to great pains to step through the art in each of these cases, in fact, almost the entire first volume of the appendix, 500 pages, is the board carefully stepping through each reference, the teachings, why someone would have been motivated to combine them, and why the art was analogous. I think it helps to take a step back and say, what was undisputed here? It was undisputed that we had vending machines with transparent fronts, we had vending machines that had bend sensors to determine if a product had, in fact, been delivered to the customer, we knew that there were a limited number of types of sensors that were available for someone to use, and we know that optical sensors had been used in several vending machines, and moreover, we know that optical sensors had been used in many fields of endeavor. This isn't a situation where the board or the examiner plucked out a single reference from some disconnected field. There were several references, including these seed dispensers, but also an intrusion detector, the safety curtain, and also optical sensors that were used in vending machines themselves. The board said, properly, if we look at Schuler, which is a glass front vending machine that meets all the other claim limitations, and already had an electromechanical bend sensor, so it would have been obvious to substitute that for an optical sensor, which could sense lighter and smaller items more accurately, even AMS's expert agrees that there would have been a problem for those types of articles in Schuler, and in terms of combining it with the other art, the board found, for example, in appendix 386 that there was a similar problem that was reasonably pertinent to the vending machine designers, which was how do you detect these small items as they're falling through a large space, and that's exactly what you could learn when you look at references like Dragne and Friend, and one other point I'd like to make about those, because it didn't get as much attention, and it's certainly not in the blue brief, is that Dragne and Friend both were found to have not only mechanisms to deal with ambient light, but also calibration circuits, and even the judge who dissented in the rehearing decision agreed that those calibration circuits were there, that they dealt with ambient light, and the board probably held ambient light could be internal or external, there's no reason to make that, to draw a differentiation between those, and moreover, other references like Call and Endel actually deal explicitly with external ambient light, so at the end of the day, this is really not that dissimilar to KSR, KSR we had pedals in a vehicle, and we were going from mechanical to electromechanical, and what do we have here, we have a vending machine with an electromechanical sensor, and we're moving to an optical sensor, it's the natural progression of the art, and unless your honors have other questions, we ask that you affirm. Your honor, I disagree with the intervener, claim construction still is an issue in this case. Do you have a cite for me? I do, I have three, your honor, the first is APPX2246, don't waste your time, just give me the numbers and all of them, 2246, 2246, I have two more, very quickly, APPX5085 and APPX5110, all of them address event space in particular. Thank you. One of the other terms that there was a dispute about, and it was raised by intervener's counsel just a minute ago, is the question of ambient light. Ambient light in this case was treated as a term that had no real limit. The patent actually defines, if you look at the 634 patent, column 16, it's APPX0552, it defines what it means by ambient light. In the specification it says the ambient light is external to the system, and excitation light is from the system. So when they say it could be from either source, analyzing the prior art, we don't agree, we've never agreed with that. We think that that's one of the terms that they sort of played with and ran over. Similarly, they grouped filtering, mechanical filtering, in the same thing as calibrating. Calibrating is adjusting, according to the claims, is adjusting detection thresholds to account for ambient light. In their case, they put calibrating so that if there's dust on the device or the emitters are weak over years, you can increase the power, and they're saying that's essentially the same as calibrating, and we've never agreed with that. But I do want to go back to the 317B issue, because a couple of interesting points were made. First... Thank you, that was helpful. You're welcome, Your Honor. First, the question of findings of fact that could have been requested and would have been happy to supply them with more detail or whatever. The reason why there was a dismissal up front, as I told you, we settled this case about two days before trial. So the judge came in, he was the chief judge at that time of that district, and he told me, I was the lead counsel in that case, he said, I understand you've got a settlement, we've got a settlement here, we've got all the terms, but we don't have it signed. You don't have the consent judgment you've agreed to in front of me. But I'm the chief judge, and I'm after all the other judges in this district because of old cases. This is the oldest case in this jurisdiction by five years, because we had 12 re-exams that the case was stable, all those re-exams were pending. So he was very interested, and he understood that he was going to dismiss it, but then reopen it once we had all the consent judgment that we agreed to finalized and the settlement executed. So that sort of explains what happened. And I don't think it's a question of any significance, but if you were interested, that's what happened. The Patent Office continues to assert that since they had a duty upon a finding of a duty to continue this re-examination, I don't agree with that. If you look at 313, it says it has a duty to open an inter-parties re-examination, not to continue it no matter what happens. In fact, 317 terminates that duty and expressly says you can't continue. You may not thereafter maintain this action or this proceeding. So just because they found initially a substantial new question of patentability, the Patent Office has no obligation to continue no matter what happens. I'm not sure I understood what he said to be as extreme as that. I think what he said is this is the duty. There are exceptions. 317 is an exception. I think that's kind of an appropriate way of putting it. Okay. I just, I want to, because in their brief sometimes it wasn't always clear. I want to make clear that that's, that duty is not unlimited. And as far as the coding case, when we looked at it, the coding case, which we had exactly the language we had a consent judgment based on party stipulation of validity, and the Patent Office terminated it twice, once in 2008 and 2009. That was the only case that we were aware of and no other case has been brought to our attention by the board or by the PTO when they were dealing with our petitions. All of the cases where the intervener now says they're consistent, all of those cases are of recent genesis. And in fact, we may be the very first one. And the reason that they gave for their reason for denying our petition to terminate is they said the AIA really changed things. And I don't agree with that. I've never agreed with that. The AIA, even as explained here today, was only partially explained. Under the AIA, under the new 317, there's two parts to it. The parties can agree in writing to request termination. And the Patent Office has two responses. The first one is automatically the petitioner, if they ask, is relieved from further participation. But then the second part of that provision is that the Patent Office has discretion to proceed without them. So it's a whole different ballgame. The adoption of the AIA 317 doesn't really reflect, I think, at all on the prior application of 317. Your time is up. So you get one final thought. You've exceeded the time. Am I negative? I apologize. In red, yes. That's why it's growing. If you look at the cases, they rely on the International Building Supreme Court case and the Affinity Labs case that came down from this court within the last year or two, I think both of those squarely support our position that stipulations in a consent judgment are treated as final law and merits. Thank you. Thank you. We thank both sides in the case this is submitted.